IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

BRYANT LEWIS; HELOISE LEWIS;
BARRY CARTER, TOR, INC.;
LEWARK, LLC; TONY ALLEN;
MARY J. ALLEN; JAMES MODISETTE;
LINDA WARE BAILEY; KENNETH WARE;
DOROTHY WARE; MARY FRANCES
WARE PHILLPS; NORMA SULLIVAN;
TRINA LOWERY; WILLIAMS LOWERY;
HARRY KOLB REVOCABLE TRUST; POLLY
FOOTE; PATRICIA SWANSON; JEROME
CAMP; PAMELA C. WARREN;
CASSIE FARRAR; and LABAN WARE                                    PLAINTIFFS


v.                            CASE NO. 12-CV-1067


ENERQUEST OIL AND GAS, LLC
and BP AMERICA PRODUCTION COMPANY                               DEFENDANTS


## MEMORANDUM OPINION

Before the Court is a Motion for Summary Judgment filed on behalf of Defendants
EnerQuest Oil and Gas, LLC ("EnerQuest") and BP America Production Company ("BP
America"). (ECF No. 23). Plaintiffs have responded. (ECF No. 31 & 38). Defendants have
replied. (ECF No. 35 & 39). The Court finds the matter ripe for consideration.

## BACKGROUND

This case arises out of several oil and gas leases of the Chalybeat Springs Unit ("the
unit"). Plaintiffs are lessors of the unit. Defendant BP America is the current lessee. The
original operator of the unit was Amco Production. In 1996, PetroQuest became the operator.
Defendant EnerQuest became operator in late 2010 and continues to operate the unit to this date.

1

In 2010, lessors became dissatisfied with PetroQuest's lack of development of the unit. In response, several lessors, which included four of the Plaintiffs in the instant suit as well as lessors who are not parties to this suit, filed a petition before the Arkansas Oil and Gas Commission ("AOGC") seeking to have the unit dissolved.  The AOGC held two hearings on the matter in September and October of 2010.

In the September hearing, the parties discussed PetroQuest's lack of development of the unit.  Tony Allen ("Allen"), a party in the AOGC proceeding and a plaintiff in this suit, reported that he made several demands on PetroQuest to develop the unit.  PetroQuest admitted that there had been little development of the unit in the past but stated that it anticipated future development.  Defendant EnerQuest was not present at the September hearing because it was not the operator of the unit at that time.  At the close of the September hearing, instead of ruling on the application, the AOGC decided to postpone adjudication until October so that it could receive additional evidence.

Between the hearing dates in September and October, PetroQuest and Defendant EnerQuest negotiated a transaction in which Defendant EnerQuest would replace PetroQuest as operator of the unit.  While Defendant EnerQuest's operational control did not begin until November 1, Defendant EnerQuest attended the October hearing.  At the hearing, Defendant EnerQuest stated that, because it had not received the relevant files from PetroQuest, Defendant EnerQuest could not report how it planned to operate the unit.  At the conclusion of the October hearing, the AOGC declined to dissolve the unit because no provision in the unit agreement required minimum production and, at that time, wells were producing.  Subsequently, in November 2010, Defendant EnerQuest began operating the unit.

2

Since becoming operator, Defendant EnerQuest and the unit working interest owners have invested $2,724,211.01 in capital expenditures. Defendant EnerQuest has reworked several existing wells and drilled an additional well to enhance the value of the unit. The unit has reported production every month except for July 2013. Specifically, during Defendant EnerQuest's operation of the unit and through its reworking of the existing wells, the unit generated $1,785,843.08 of net revenue, and the royalty owners accrued $215,324.14 in royalties.

Despite this development, the parties agree that Defendant EnerQuest has not developed the brown dense zone. Plaintiffs allege that this formation is productive. However, according to Defendants's expert, Ken Fristche ("Fritsche"), drilling in the brown dense zone is not commercially reasonable. Fritsche reported that drilling into the brown dense zone requires horizontal well-bores. Fritsche estimated those wells can cost over six million dollars per well, exclusive of research costs. Fritsche reported that three horizontal wells have been drilled and completed in the brown dense zone by other operators as of June 6, 2013. However, since their completion, two of the wells have been abandoned and one is currently shut-in. Because of the characteristics of the brown dense zone, the expected costs, and the poor performance of the three wells, Fristche concluded that, in his opinion, the brown dense zone was not yet a commercially viable zone for production of oil and gas. Fritsche stated that Defendant EnerQuest should wait for other companies with larger acreage positions at stake to prove the economics of the brown dense play. Fritsche also noted Defendant EnerQuest's efforts to test other zones of the unit. Fritsche indicated that from 1998 through the time that Defendant EnerQuest became operator, several wells were drilled to test additional zones, all of which were unsuccessful.

Dissatisfied with Defendant EnerQuest's development of the unit, Plaintiffs filed suit in this Court against Defendants.  In this case, Plaintiffs request the Court to partially cancel the leases as to all formations not currently producing.  Plaintiffs assert that cancellation of the leases is warranted because Defendants breached the implied covenant to develop the unit.

<u>STANDARD OF REVIEW</u>

The standard of review for summary judgment is well established.  The Federal Rules of Civil Procedure provide that when a party moves for summary judgment:  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Krenik v. County of LeSueur*, 47 F.3d 953 (8th Cir.1995).  The Supreme Court has issued the following guidelines for trial courts to determine whether this standard has been satisfied:

> The inquiry performed is the threshold inquiry of determining whether there is a need for trial-whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986). *See also Agristor Leasing v. Farrow*, 826 F.2d 732 (8th Cir. 1987); *Niagara of Wisconsin Paper Corp. v. Paper Indus. Union-Management Pension Fund*, 800 F.2d 742, 746 (8th Cir. 1986).  A fact is material only when its resolution affects the outcome of the case.  *Anderson*, 477 U.S. at 248.  A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party.  *Id*. at 252.

The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party.  *Enterprise Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996).  The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  *Id*.

4

The nonmoving party must then demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik*, 47 F.3d at 957. A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson*, 477 U.S. at 256.

DISCUSSION

Defendants argue that Plaintiffs cannot secure a cancellation of the leases because Plaintiffs failed to give Defendants notice of a breach of the implied covenant. Plaintiffs do not dispute that notice is required but argue that Defendants were notified in writing when Plaintiffs filed an application before the AOGC.[1] Plaintiffs additionally argue that Allen's demands to PetroQuest gave Defendants notice of a breach.

The parties do not cite any case law discussing the notice requirements for cancellation of an oil and gas lease for the breach of an implied covenant. The Court also had difficulties finding such an Arkansas case. However, in *Stephens Production Co. v. Johnson*, the Arkansas Supreme Court briefly discussed the notice requirement in a concurring opinion. The Arkansas court stated that "the lessor [should] notify the lessee that if a well is not drilled within a certain reasonable period of time, the lease will be cancelled." 311 Ark. at 208, 842 S.W.2d at 853 (Wright, J., concurring). Additionally, the Arkansas court stated that the goal of the notice requirement is to help prevent litigation, which should be an objective of the judicial system. *Id.* at 209, 842 S.W.2d at 853. In extending beyond Arkansas law, the Eighth Circuit has stated that "[a]n oil and gas lease is recognized and protected property interest [and a] cancellation of an oil and gas lease affects a forfeiture of that interest." *Superior Oil Co. v. Devon Corp.*, 604 F.2d

---

[1] The Court notes that there is a debate among courts whether notice may be waived. *See, e.g.*, *Superior Oil Co. v. Devon Corp.*, 604 F.2d 1063, 1069 (8th Cir. 1979); *Compare Byrd v. Bradham*, 280 Ark. 11, 14-15, 655 S.W.2d 366, 368 (1983) *with Stephens Production Co. v. Johnson*, 311 Ark. 206, 208, 842 S.W.2d 851, 853 (1992) (Wright, J., concurring). However, Plaintiffs do not argue waiver. Plaintiffs assert that they gave effective notice.

1063 at 1069 (applying Nebraska law).  The Eighth Circuit has also noted that "[a] lessee, even though he may be in breach of the implied covenant, should be informed of that breach, and should be given an opportunity to redeem himself by commencing further development within a reasonable time," and the notice requirement is "consistent with due process and with the law's abhorrence of forfeitures."  *Id.*

In the instant case, viewing the facts in the light most favorable to Plaintiffs, the AOGC proceedings did not give Defendants notice of a breach and a reasonable time to comply.  The October hearing arguably gave Defendant EnerQuest notice of PetroQuest's alleged breach.  However, the October hearing did not give notice to Defendant EnerQuest of its alleged breach.  At the hearing, Defendant EnerQuest reported that its operational control of the unit would begin on November 1.  Accordingly, at that time, Defendant EnerQuest could not have been in breach of a covenant because it had not begun operation of the unit.  In other words, Plaintiffs cannot argue that they gave Defendant EnerQuest notice of a breach in October if no breach could have actually occurred.

Further, the Court also notes that the AOGC proceedings involved different issues and different parties than the current case.  In their application to the AOGC, the lessors asked for dissolution of the unit.  (ECF No. 32-2).  The lessors did not request cancellation of their leases.[2]  Further, only four of the twenty-two Plaintiffs in the instant suit were named in the AOGC proceedings.  Therefore, the Court finds that the AOGC proceedings did not give notice to Defendant EnerQuest.

Plaintiffs additionally argue that notice was given by Allen.  However, again, at the time Allen demanded development of the unit, PetroQuest was allegedly in breach of the covenant,

---

[2] The Court notes that cancellation of the leases was discussed at the AOGC hearing.  However, the commissioners questioned their own jurisdictional authority to cancel a lease.

not Defendant EnerQuest.   Defendant EnerQuest's operational control of the unit had not commenced.  Thus, no breach had occurred, and no notice could have been given.

Accordingly, the Court concludes that Plaintiffs failed to give Defendants notice of Defendant EnerQuest's breach and a reasonable time to comply with the covenant.  The notice requirement imposed on Plaintiffs is consistent with due process given Defendants's property interest at stake.  Because Plaintiffs did not give Defendants notice, the Court need not address the merits of whether Defendants breached the implied covenant to develop the leasehold.

<u>CONCLUSION</u>

For the reasons stated above, the Court finds that Defendants's Motion for Summary Judgment (ECF No. 23) should be and hereby is **GRANTED**.  Accordingly, Plaintiffs's claims are **DISMISSED**.  Plaintiffs's Motion for a Jury Trial (ECF No. 18) is now **MOOT**.  An order of even date consistent with this Opinion shall issue.

**IT IS SO ORDERED**, this 13th day of January, 2014.

/s/ Susan O. Hickey
Susan O. Hickey
United States District Judge
